IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**EDGAR RAY KILLEN**                                                                                           **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 3:10CV122-DPJ-FRB**

**JIM HOOD, JOHN DOAR, SIX UNKNOWN**
**NAMED AGENTS OF THE FBI, and THE**
**FEDERAL BUREAU OF INVESTIGATION**                                              **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT**
**OF DEFENDANT JIM HOOD'S MOTION TO DISMISS**

**INTRODUCTION**

On June 21, 2005, exactly forty-one years after civil rights workers James Chaney, Andrew Goodman, and Michael Schwerner were kidnapped and killed by members of the Neshoba County and Lauderdale County chapters of the White Knights of the Ku Klux Klan, Edgar Ray Killen was convicted by a Neshoba County jury of three counts of manslaughter in connection with their deaths. The Mississippi Supreme Court affirmed the conviction, and Killen is currently serving three consecutive twenty-year sentences for his participation in each of the three killings. *Killen v. State*, 958 So.2d 172 (Miss. 2007). Killen was the Kleagle–the organizer or recruiter–for the Neshoba and Lauderdale County Klan Klaverns at the time the three civil rights workers were killed. *Id.* at 176, n.7. The evidence presented at Killen's trial demonstrated that Killen helped plan and orchestrate the kidnapping and killing of Chaney, Goodman, and Schwerner in retaliation against them for assisting black Mississippi citizens register to vote and establishing a community center and library in Meridian for black teens and children. *Id.* at 175-84.

1

At the time, the State of Mississippi failed to prosecute anyone in connection with the deaths of Chaney, Goodman, and Schwerner. *Id.* at 173. However, the federal government did bring charges against Killen and seventeen others for conspiracy to violate the civil rights of Schwerner, Chaney, and Goodman. *Id.* The federal jury in that 1967 trial was unable to reach a verdict as to Killen, and he remained free until his 2005 conviction. *Id.*

Killen, in concert with his fellow Klan recruits, took the lives of three young men because they dared to help others stand up for their basic civil rights. Now, ironically, Killen seeks relief under the same federal constitutional protections that his victims gave their lives advancing. In his complaint, filed under 42 U.S.C. §§ 1983 and 1985, Killen alleges multiple unlawful acts by federal prosecutors and agents of the Federal Bureau of Investigation during the original investigation of the civil rights workers' killings in the 1960's and during the 1967 federal trial. According to Killen, the FBI engaged in a vast conspiracy to deprive Killen and others of their constitutional rights by engaging one or more mafia assassins to threaten and otherwise coerce witnesses, using the United States military in the investigation of the killings and of the Klan in general, and operating an unlawful counterintelligence program ("COINTELPRO-WHITE HATE") to "expose, disrupt and otherwise neutralize" the Klan–all in violation of Killen's First Amendment rights to free speech and association. Killen further alleges that the FBI and federal prosecutors conspired to deprive Killen of his Sixth Amendment rights by interfering with the jury pool during the 1967 federal trial and by using the lead defense attorney in the 1967 trial as a paid informant.

Killen claims that Mississippi Attorney General Jim Hood became a part of this conspiracy by receiving and relying upon the federal government's file from the 1967 trial in his 2005 prosecution of Killen for the murders of Chaney, Goodman, and Schwerner. Killen further alleges

that the Attorney General has participated in a "conspiracy of silence" by recognizing and failing to report the alleged unconstitutional actions by the federal agents and prosecutors. Killen's claims against the Attorney General are utterly false.

As a preliminary matter, because Killen's attempted service of process on the Attorney General was made by certified mail, service was not proper and the Attorney General objects to such insufficient service. Also, before the merits of Killen's claims may be addressed, it is incumbent upon this Court to first address the Attorney General's Eleventh Amendment and prosecutorial immunity protections. As a state official, the Attorney General is entitled to Eleventh Amendment immunity for Killen's claims against him in his official capacity for monetary and declaratory relief. In addition, because all of the Attorney General's actions in this case were in connection with the judicial phase of the criminal process, he is entitled to be dismissed in his individual capacity pursuant to his absolute prosecutorial immunity. Moreover, because Killen's §§ 1983 and 1985 claims challenge the constitutionality of his conviction, they are not cognizable based on the United States Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994). Finally, to the extent that Killen seeks a declaratory judgment against the Attorney General stating that Killen's constitutional rights were violated as a result of past conduct, his claim should be dismissed based on lack of subject matter jurisdiction on the ground of mootness. As a result, the Attorney General respectfully requests that this Court dismiss all claims against him in this matter.

**ARGUMENT**

I.  **Attempted Service of Process on the Attorney General by Certified Mail was Ineffective.**

On March 23, 2010, Killen attempted service of process on the Attorney General by delivering a copy of the summons and complaint via certified mail. The Attorney General is a state government official and an adult resident citizen of the State of Mississippi, and therefore is an instate defendant in this case. There is no provision in the Federal Rules of Civil Procedure for service by certified mail on a state official or an instate individual defendant. Fed. R. Civ. P. 4(e) and (j)(2); Miss. R. Civ. P. 4(c)(5), (d)(1) and (d)(5); *Stapley v. Miss. Attorney General*, 2009 WL 2840513, *1-2 (S.D. Miss. Aug. 28, 2009). A state officer sued in his official capacity is subject to service pursuant to Fed. R. Civ. P. 4(j). *See Moore v. Hoseman*, 591 F.3d 741, 746-47 (5th Cir. 2009). Rule 4(j) provides for service on a state entity by delivering a copy of the summons and complaint to its chief executive officer, or as provided by that state's law. In Mississippi, service upon a state officer is made "by delivering a copy of the summons and complaint to the Attorney General of the State of Mississippi." Miss. R. Civ. P. 4(d)(5). Service of process on the Attorney General is properly made by delivering a copy of the summons and complaint to his office located at 550 High Street, Jackson, Mississippi, in the Walter Sillers Building. The Attorney General will stipulate that service of process properly made at that address will suffice to serve him in both his official and individual capacities. The Attorney General specifically objects to the insufficient service via certified mail, and reserves the right to assert the defense of insufficient service as a separate basis for dismissal of this action should the plaintiff fail to properly serve him within the time allotted by Fed. R. Civ. P. 4(m).

> II. **Killen's Claims Against Jim Hood in His Official Capacity as Attorney General of the State of Mississippi Are Barred by the Eleventh Amendment to the United States Constitution.**

The Eleventh Amendment incorporates common law principles of sovereign immunity and confirms that the judicial power established by Article III does not confer jurisdiction over suits against non-consenting states. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers*, 123 U.S. 443, 508 (1887). "The amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Because sovereign immunity limits the jurisdiction of the federal courts, an action that is barred by sovereign immunity should be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). Such a motion to dismiss on Eleventh Amendment grounds "involves a claim to a fundamental constitutional protection," the value of which is lost if the litigation is allowed to proceed. *Puerto Rico Aqueduct*, 506 U.S. at 145.

It is "well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Suits against state agencies or officials which ultimately seek monetary recovery from state funds are barred by the Eleventh Amendment. *Id.* Thus, state officials are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The reasoning behind this well-established principle is that "a

judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

State official Eleventh Amendment immunity is subject only to the *Ex parte Young* exception for suits against state officials for prospective relief from alleged federal law violations. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception does not apply to claims for retroactive declaratory relief, which are barred by the Eleventh Amendment since they would resolve disputes over the past conduct of state government officials as opposed to ongoing federal law violations. *Green v. Mansour*, 474 U.S. 64, 73 (1985). To be permissible under *Ex parte Young*, the claim must involve a violation of federal law which is ongoing, and the remedy sought must be designed to ensure future compliance with that federal law. *Papasan v. Allain*, 478 U.S. 265, 277-78, 282 (1986). Moreover, *Ex parte Young* does not extend to state law claims against state officials; those claims are barred by the Eleventh Amendment whether the relief sought is prospective or retroactive. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Congress may abrogate state sovereign immunity when it unequivocally intends to do so and, in its abrogation, acts pursuant to a valid grant of constitutional authority. *Tennessee v. Lane*, 541 U.S. 509, 509-10. (2004); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Sections 1983 and 1985, however, do not abrogate Eleventh Amendment immunity, and the State of Mississippi has not waived it. *See Hines v. Miss. Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000) (Congress has not chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (Section 1983

does not abrogate Eleventh Amendment immunity); Miss. Code Ann. § 11-46-5(4) (preserving Mississippi's Eleventh Amendment immunity).

The Attorney General is clearly qualified as a state official in this case. Therefore, Killen's §§ 1983 and 1985 claims against the Attorney General are barred by the Eleventh Amendment, and to the extent that he is sued in his official capacity, the Attorney General is entitled to dismissal of Killen's claims for monetary damages.[1] The Attorney General is also entitled to dismissal on grounds of Eleventh Amendment immunity of Killen's claim for declaratory relief. Killen asks this Court to enter a declaratory judgment "that the actions of the Defendants were invasive of his Constitutional rights, injurious to his physical well-being, contrary to the methods and procedures acceptable for law enforcement officers in investigating and prosecuting a crime, and representative of a fundamental breakdown in the adversarial process." Such a judgment against the Attorney General as a state officer declaring that he violated federal law in the past is plainly barred by the Eleventh Amendment and does not fall within the narrow exception under *Ex parte Young*. *See Puerto Rico Aqueduct*, 506 U.S. at 146; *Green*, 474 U.S. at 73.

### III. Killen's Claims for Monetary Damages Against Jim Hood in His Individual Capacity are Barred by His Absolute Prosecutorial Immunity.

Killen's complaint charges that the defendants conspired to deprive Killen of his constitutional rights by engaging one or more mafia assassins to threaten and otherwise coerce witnesses during the initial criminal investigation in the 1960's, using the United States military in the investigation, operating an unlawful counterintelligence program ("COINTELPRO-WHITE

---

[1] Moreover, the Attorney General in his official capacity is not a person under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Therefore, Killen's civil rights claims against him fail to state a claim upon which relief may be granted.

HATE") during the investigation, interfering with the jury pool during the 1967 trial, and using the lead defense attorney in the 1967 trial as a paid informant. As to the Attorney General, Killen repeatedly asserts what amounts to a single claim – that the Attorney General continued the alleged conspiracy by knowingly relying upon the results of the prior "tainted" investigation and proceedings and by failing to report, thereby maintaining the cover-up of the allegedly unconstitutional activities of his co-defendants.

The claims against the Attorney General are utterly false. However, before reaching the merits of Killen's claims against the Attorney General, this Court must resolve the threshold question of whether the Attorney General is entitled to dismissal based on his absolute prosecutorial immunity. Because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action," *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985), courts should address the issue of prosecutorial immunity at the earliest possible point in litigation. *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). The Attorney General's actions of which Killen complains are all firmly within the limits of the prosecutorial function protected by absolute immunity. *See id.* at 285 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (professional evaluation of the evidence assembled by investigators and appropriate preparation for its presentation at trial are acts entitled to protection under the gambit of prosecutorial immunity). As a result, the Attorney General respectfully moves this Court for dismissal of all claims against him in his individual capacity in this matter.

Important public policy considerations have led the courts to conclude that prosecutors must be shielded by absolute immunity from civil liability for actions taken in initiating a prosecution and presenting the case for trial. *Imbler v. Pachtman*, 424 U.S. 409, 423-31 (1976). "The office of

public prosecutor is one which must be administered with courage and independence." *Id.* at 423 (quoting *Pearson v. Reed*, 44 P.2d 592, 597 (Cal. 1935)). If a prosecutor were denied absolute immunity from civil suit, the mere threat of such litigation would "cause a deflection of the prosecutor's energies from his public duties" and lead him to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* The threats to the public good that would result from a lack of prosecutorial immunity include not only the diversion of a prosecutor's time and energy away from enforcing the law, but also the potential for prosecutors to make decisions based on fear of personal liability instead of the pursuit of justice. *Id.* at 424-27. Subjecting prosecutors to the necessity of defending civil suits past the point of pre-trial dismissal "would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice." *Id.* at 427-28. As a result, prosecutors are shielded by absolute immunity for challenged activities that are an "integral part of the judicial process," including the initiation of prosecution and presenting the State's case. *Id.* at 430-31.

    Any actions taken by the Attorney General in this case were "intimately associated with the judicial phase of the criminal process" and thus entitle him to be dismissed pursuant to absolute prosecutorial immunity. *See Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted) (quoting *Imbler*, 424 U.S. at 430-31). Generally speaking, a prosecutor is absolutely immune from suit whenever he acts in his role as advocate for the state. *Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999). Prosecutors are thus entitled to

absolute immunity for their acts in initiating criminal proceedings and carrying the case through the judicial process. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Brandley v. Keeshan*, 64 F.3d 196, 201 (5th Cir. 1995) (abrogated on other grounds by *Wallace v. Kato*, 549 U.S. 384, 397 (2007). During trial, prosecutors enjoy absolute immunity from personal liability for actions taken in presenting the state's case. *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997); *see also Mays v. Sudderth*, 97 F.3d 107, 111 (5th Cir. 1996); *Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993) (abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249, 251 (5th Cir. 1994)). Neither malicious intent in instituting a prosecution, *Brummet v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1981), nor willful suppression of exculpatory material, *Imbler*, 424 U.S. at 430-31, n. 34, nor the knowing use of perjured testimony at trial, *Graves*, 1 F.3d at 318 n. 9, nor even conspiracy to predetermine the outcome of a proceeding can pierce the shield of absolute immunity. *Boyd*, 31 F.3d at 285. A prosecutor is only liable for conspiracy "if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred while he was not in his prosecutorial role." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002). Because all of the actions by the Attorney General charged by Killen as being in furtherance of the alleged conspiracy occurred while the Attorney General acted in his role as prosecutor, he is entitled to dismissal from this suit.

    **IV.    Killen's Civil Rights Claims Are Not Cognizable Based on the United States Supreme Court's Opinion in *Heck v. Humphrey*.**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court addressed the question whether a prisoner may constitutionally challenge his state conviction or sentence in a suit for monetary damages under 42 U.S.C. § 1983. The Court concluded that a § 1983 action was not an appropriate vehicle for challenging a criminal judgment where the cause of action would require

the plaintiff to prove that his conviction or confinement was unlawful. *Id.* at 486. In order to pursue such an action, the plaintiff's conviction or sentence must first be invalidated. *Id.* at 486-87.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. In other words, rather than imposing an exhaustion of habeas corpus remedies requirement on § 1983 actions challenging a criminal conviction or sentence, the Court simply ruled that no such cause of action exists unless and until the conviction or sentence is first invalidated. *Id.* at 489. The *Heck* analysis applies equally to claims for declaratory relief that similarly would necessarily imply the invalidity of a conviction or sentence. *See, e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Guajardo v. Bayda*, 344 Fed. Appx. 922, 924 (5th Cir. 2009); *Webb v. Owens*, 308 Fed. Appx. 775, 775-76 (5th Cir. 2009). Further, the Supreme Court's decision in *Heck* has been extended by the federal circuit courts to apply to claims brought under § 1985. *See, e.g., Amaker v. Weiner*, 179 F.3d 48, 51-52 (2nd Cir. 1999); *Zhai v. Cedar Grove Municipality*, 183 Fed. Appx. 253 (3rd Cir. 2006); *Poston v. Shappert*, 222 Fed. Appx. 301 (4th Cir. 2007); *Stephenson v. Reno*, 28 F.3d 26 (5th Cir. 1994); *Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004); *Quarterman v. Crank*, 221 F.3d 1352 (10th Cir. 2000); *Simmons v. Beshouri*, 200 Fed. Appx. 3 (D.C. Cir. 2006).

Because Killen is a state prisoner who has filed an action for declaratory relief and monetary damages under §§ 1983 and 1985, the first question that must be asked under the *Heck* analysis is

11

whether Killen's claims challenge the constitutionality of his conviction or sentence. *Boyd*, 31 F.3d at 283.  Essentially, Killen's complaint charges that the defendants conspired to deprive Killen of his constitutional rights by engaging one or more mafia assassins to threaten and otherwise coerce witnesses during the investigation, using the United States military in the investigation, operating an unlawful counterintelligence program during the investigation, interfering with the jury pool, and using the lead defense attorney as a paid informant.  Killen asserts that, by receiving and relying on the FBI's investigative file in his prosecution of Killen in 2005, the Attorney General "continued the conspiracy of abusing judicial process and interfering with the adversarial system."  It is Killen's position that these actions by the defendants deprived him of his "right to counsel, the right to confront his accusers, and the right to a balanced adversarial system of justice."  By asserting these claims, Killen is questioning the constitutional validity of his trial and conviction. *See Boyd*, 31 F.3d at 283 (successful ineffective assistance of counsel claim would call conviction into question); *Stephenson*, 28 F.3d at 27 (civil rights action constituted a challenge to the fact or length of prisoner's confinement because it alleged, *inter alia*, violation of his constitutional rights during criminal investigation, ineffective assistance of counsel, and conspiracy to violate his constitutional rights and to obstruct justice).  Therefore, because Killen's conviction has not been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus," *Heck*, 512 U.S. at 489, his civil rights claims in this action should be dismissed. *Boyd*, 31 F.3d at 283.

## V.     Killen's Claim for Declaratory Relief is Moot.

Finally, to the extent that Killen seeks purely declaratory relief as a remedy for allegedly unconstitutional past conduct by the Attorney General, his claim should be dismissed based on lack of subject matter jurisdiction on the ground of mootness.

> "[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, no abstractions' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Past exposure to illegal conduct alone does not amount to a present substantial controversy supporting injunctive or declaratory relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). In order to satisfy the case or controversy requirement, and escape a mootness challenge, the plaintiff would have to show that the declaratory relief sought applied to ongoing policy or that the claim fit the exception for cases capable of repetition but evading review. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). Otherwise, a declaratory judgment holding that the defendants' past conduct violated the plaintiff's rights would not redress any wrong and would amount to no more than an advisory opinion, which the Supreme Court has consistently held is beyond the power of the federal courts. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

Killen is a state prisoner asserting claims against state and federal officials arising out of his criminal investigation and prosecution. The defendants' conduct of which Killen complains all occurred in the past, and Killen makes no assertion that he will in future be subjected to the same or similar conduct. Nor does he challenge an ongoing state or federal policy in violation of his rights. Such injury in the past does not support a finding of an Article III case or controversy when

the relief sought is a declaratory judgment. *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1348 (11th Cir. 1999). Where, as here, a plaintiff prisoner seeks declaratory relief against a prosecutor alleging unconstitutional actions taken in his prosecutorial role, there is no basis for the declaratory relief because it relates solely to past conduct. *Holt v. Crist*, 233 Fed. Appx. 900, 903-04 (11th Cir. 2007). Because Killen has already been convicted, the only controversy that may still exist would be between the plaintiff and the state officials responsible for continuing his imprisonment. *See Slavin v. Curry*, 574 F.2d 1256 (5th Cir. 1978) (suit by inmate for declaratory relief against trial judge did not present an active controversy between parties if plaintiff was already convicted; "whatever controversy may exist would be between Slavin and the state official responsible for continuing his imprisonment"), *withdrawn as moot on rehearing by Slavin v. Curry*, 583 F.2d 779 (5th Cir. 1978), *overruled on other grounds by Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979). Because a declaratory judgment against the Attorney General for his past conduct "would serve no useful purpose as a final determination of rights," such relief is unavailable to Killen, and his claim should be dismissed as moot. *Green*, 474 U.S. at 73 (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 247 (1974)).

## **CONCLUSION**

For all of the above and foregoing reasons, Defendant Jim Hood respectfully requests that this Court dismiss all claims against him in this matter.

                Respectfully submitted,

                JIM HOOD, Defendant

BY:   /s Mary Jo Woods
        MARY JO WOODS, MSB No. 10468
        SPECIAL ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
Post Office Box 220
Jackson, Mississippi  39205
Telephone No. (601) 359-3680
Facsimile:  (601) 359-2003

## **CERTIFICATE OF SERVICE**

      I, Mary Jo Woods, Special Assistant Attorney General of the State of Mississippi, do hereby certify that on, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

>Jon A. Green
>jongreen3@hotmail.com
>
>Robert A. Ratliff
>rar@ratlifflegalgroup.com

**THIS** the 12th day of April, 2010.

                                                  /s Mary Jo Woods
                                                  Mary Jo Woods