IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EDGAR RAY KILLEN                                                                              PLAINTIFF

VS.                                                              CIVIL ACTION NO.3:10cv122-DPJ-FKB

JIM HOOD, JOHN DOAR, SIX UNKNOWN
AGENTS OF THE FBI, and THE FEDERAL
BUREAU OF INVESTIGATION                                                              DEFENDANTS

REPORT AND RECOMMENDATION

This cause is before the Court on Defendants' motions to dismiss [docket nos. 4 and 13] and pursuant to referral of the motions to the undersigned by the district judge. Having considered the motions, responses, rebuttals, and memoranda of the parties, the undersigned recommends for the reasons stated herein that the motions be granted.

In 1964, three civil rights workers, James Chaney, Andrew Goodman, and Michael Schwerner, were killed by members of the Neshoba County and Lauderdale County chapters of the Ku Klux Klan. Eighteen individuals, including Edgar Ray Killen, were indicted and tried in 1967 in federal court for the murders under federal civil rights statutes. That trial resulted in seven convictions, eight acquittals, and a deadlocked jury as to three defendants, including Killen. Thirty-eight years later, the State of Mississippi prosecuted Killen for the murders. In 2005 a Neshoba County jury found Killen guilty of three counts of manslaughter. He was sentenced to sixty years in prison. His conviction was affirmed on direct appeal.[1]

---

[1] Killen's petition for habeas relief pursuant to 28 U.S.C. § 2254 is currently pending in this Court as *Edgar Ray Killen v. Christopher Epps, et al.,* civil action no. 4:08cv77-HTW-LRA.

Killen has now brought the present action alleging violations of his civil rights in the investigation and prosecution of the crimes.  Generally, the complaint alleges that the FBI, in its zeal to solve the crimes, used questionable techniques to obtain evidence and that John Doar, the chief federal prosecutor in the 1967 federal trial, abused the federal criminal process.  Plaintiff charges both the FBI and Doar with conspiring to violate Killen's rights and alleges that Mississippi Attorney General Jim Hood, the chief prosecutor in the 2005 state trial, joined in the conspiracy by using information gleaned from the other defendants' unlawful acts and by failing to report those acts.  Killen seeks monetary and declaratory relief.

In order to survive Defendants' motions, Killen's complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  With these principles in mind, the undersigned turns to an analysis of Counts I, II and III of the complaint,[2] beginning with the approach promulgated in Twombly: The division of the statements in the complaint into the categories of factual allegations, which the Court must accept as true, and legal conclusions, the veracity of which the Court is not required to accept.  Legal conclusions

---

[2]Counts I, II and III are the only counts which purport to allege causes of action. Count IV, entitled "Bivens Action," merely states that the Unknown Agents engaged in the allegedly wrongful activities along with the other defendants; Count V is a prayer for a declaratory judgment determining that Defendants' actions were wrongful; and Count VI is merely a prayer for punitive damages.

2

"couched as factual allegation[s]" fall into this latter category. While the legal conclusions may provide a framework for a complaint, it is the factual allegations of the complaint which determine whether a plaintiff has shown that he is entitled to relief. *Iqbal* at 1950.

In Count I, Plaintiff charges the FBI and Doar with having entered into a conspiracy to violate Killen's First Amendment rights to free speech and free association. An exhaustive search of the entire complaint yields the following factual allegations arguably relevant to this claim: Defendants desired to "neutralize the Plaintiff and destroy what he stood for," and to "curtail, chill and forestall" his future activities of speaking out against civil rights workers and associating with others who held beliefs similar to his. To carry out this purpose, they "trumpeted" to the press and public that Killen was a "violent, dangerous terrorist," they arrested him for murder, and they agreed to physically harm him. Furthermore, the FBI contracted with and paid organized crime figures to "threaten, assault, intimidate, injure and torture potential witnesses" and to threaten and terrorize persons who might be members of the Ku Klux Klan. Doar and the FBI used the United States military to investigate the killings, and they operated a highly secretive counterintelligence program for the purpose of exposing, disrupting and neutralizing the Ku Klux Klan. These defendants also agreed to keep these actions secret. In his prosecution of Killen in 2005, Defendant Jim Hood learned of these secretive activities but did not expose them. Killen alleges that these activities had a "chilling effect" on him and that he was injured by them, although he states that he did not learn of them until November of 2007.

These are the sum total of the factual allegations offered in support of Killen's First Amendment claims. The remainder of the allegations consist of nothing more than legal conclusions: That Defendants conspired to deprive Plaintiff of his First Amendment rights, that they abused government power, that their conduct was the proximate cause of violations of Plaintiff's rights, that they substantially and materially restrained Plaintiff's fundamental civil rights, and that their actions, including their "conspiracy of silence," were malicious and intentional. There are no facts indicating that Killen wanted or attempted to engage in any particular activity or speech after November of 2007 - when he says he learned of Defendants' actions - or how the Defendants' alleged activities prevented or discouraged him from doing so. Furthermore, even if he had included such facts in the complaint, an allegation that his speech was or has been "chilled" by actions which occurred forty years earlier would not be "plausible on its face." The undersigned concludes that Count I does not state a claim for which relief can be granted and is therefore subject to dismissal.

In Count II, Plaintiff charges Defendants with having entered into a conspiracy to commit intentional torts. After incorporating all the previous allegations, the complaint in this count goes on to allege the following: The FBI employed George Scarpa, Sr., an organized crime figure, and paid him at least $30,000 to locate the victims' bodies and otherwise obtain evidence for the prosecution of the crimes. Mr. Scarpa's tactics included "intimidation of potential witnesses, pistol-whipping actual witnesses, and assaulting other local residents."  In Count III, the last substantive count of the complaint, Killen alleges that Defendants conspired with one another to abuse process and tortuously interfere

4

with the adversarial process. In addition to the previous allegations, which are incorporated by reference, Killen states that Defendant Doar arranged in the 1967 trial for a non-local, all-white jury, provided the names and addresses of the jurors to the FBI, and paid a defense attorney to be an ongoing informant. As to the 2005 trial, Killen contends that Hood received the files from the 1967 trial but failed to report the abuse and unconstitutional activities which those files detailed. The remainder of the allegations consist of nothing more than legal conclusions such as "Defendants conspired with each other, and with others, to allow tortuous acts to occur against Plaintiff and/or to maintain the secrecy of those acts," and that Defendants' actions were "intentional, malicious, and beyond the scope of their official duties."

The gaping hole in Counts II and III is the absence of any allegation of a specific wrongful act committed by Defendants against Plaintiff. In fact, the *only* factual allegations of any wrongdoing at all by anyone against anyone are those concerning intimidation of witnesses and the use of a defense attorney as an informant. But even as to these, Killen fails to allege how he was injured by such actions. He does not claim that any of these witnesses testified at his state trial - the only one at which he was convicted - or that they falsely implicated him in the murders. He does not claim that his own attorney was a paid informant or, if so, how he was injured, given the fact that he was not convicted in the federal proceeding. Indeed, neither count specifies any harm at all suffered by Plaintiff as a result of Defendants' actions. There is nothing here from which the Court can draw a reasonable inference that Defendants are liable to Plaintiff.

In sum, the Complaint in this case consists of little more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal* at 1949. The facts alleged permit the Court to infer, at most, nothing more than "the mere possibility of misconduct." *Id.* at 1950. Killen has failed to plead facts which cross the line from the possible to the plausible. *Id.* at 1949. For this reason, the undersigned recommends that the Complaint be dismissed for failure to state a claim.

Given Defendants' clear entitlement to dismissal pursuant to Fed.R.Civ.P. 12(b)(6), lengthy analysis of Defendants' other arguments in favor a dismissal is unnecessary. Nevertheless, some deserve mention. As Doar and Hood point out, they are entitled to absolute prosecutorial immunity for any claims related to their prosecution of Plaintiff. *See Imbler v. Pachtman,* 424 U.S. 409, 410, 430-31 (1976) (holding that a criminal prosecutor is absolutely immune to suit for actions taken in the performance of the traditional functions of an advocate). Of course, precise application of the doctrine of prosecutorial immunity to any particular claim is difficult, given Plaintiff's failure to state any claim at all. This is particularly so with regard to the vaporous allegations directed toward Defendant Hood. Nevertheless, this immunity would undoubtedly cover most, if not all, of the allegations in Counts II and III. No claim against the FBI can stand, as the Eleventh Amendment prohibits any monetary judgment against this entity. Furthermore, those claims in Count III which allege constitutional error in Plaintiff's 2005 trial would be dismissable under *Heck v. Humphrey*, 512 U.S. 477, 486 (1974) (barring claims under § 1983 that challenge the validity of an extant criminal conviction if the claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or

6

confinement"). Finally, because Plaintiff has failed to allege the violation of any clearly-established constitutional right, the individual defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of a which a reasonable person would have known.")

For these reasons, the undersigned recommends that Defendants' motions be granted and the complaint dismissed with prejudice. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 3rd day of February, 2011.

        /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE