**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


**EDGAR RAY KILLEN,**

      **Plaintiff,**


**vs.**                                 **Case No. 3:10-CV-122-DPJ-FRB**


**JIM HOOD, JOHN DOAR, SIX UNKNOWN
AGENTS OF THE FBI,  and
THE FEDERAL BUREAU OF
INVESTIGATION**

      **Defendants.**

_____/


**PLAINTIFFS OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMENDATION
CONCERNING DEFENDANTS' MOTIONS TO DISMISS**

COMES NOW, Plaintiff Edgar Ray Killen, by and through his undersigned counsel, who

submits these written objections to the proposed findings, conclusions, and recommendations

contained in the Magistrate's Report and Recommendation, docket number 20, (hereinafter

referred to as the "Report and Recommendation"), pursuant to Fed.R.Civ. P.72(b).

**Procedural Introduction**

In response to Plaintiff's filing of the subject civil Complaint against the Defendants on

February 24, 2010 (docket 1), the Defendants filed motions to dismiss, one from Defendant Jim

Hood (docket number 4) and one from the Federal Defendants (docket number 13).  These

motions remained filed but unaddressed for more than ten months. On September 24, 2010, the

presiding judge of this matter, the Honorable Daniel Jordan III, referred the pending motions to

Magistrate Judge F. Keith Ball for a determination pursuant to Federal Rules of Civil Procedure

72(b).  Without holding a hearing or any other proceeding as required under Rule 72, Magistrate

Judge Ball issued a Report and Recommendation, as docket number 20, on February 3, 2011.

Pursuant to the Rule 72(b), Federal Rules of Civil Procedure and the subject Report and

Recommendation, Plaintiff files these Objections.

## Noted Objections

Pursuant to Rule 72(b), Plaintiff specifically objects to the following findings and conclusions.[1]

1.  Plaintiff objects to the Magistrate's finding that Count I does not state a claim for which relief

can be granted (page 4, Report and Recommendation);

2.  Plaintiff objects to the Magistrate's finding that Counts II and III do not state claims for which

relief can be granted (page 6, Report and Recommendation);

3.  Plaintiff objects to the Magistrate's finding that Defendants Doar and Hood are "entitled to

absolute prosecutorial immunity for any claims related to their prosecution of Plaintiff." (page 6,

Report and Recommendation);

4.  Plaintiff objects to the Magistrate's finding that "[n]o claim against the FBI can stand, as the

Eleventh Amendment prohibits any monetary judgment against this entity."(page 6, Report and

Recommendation);

---

[1]The interpretation of "specific" as used in Fed. R. Civ. P. 72(b) requires a party only to specify each issue for which review is sought and not the factual or legal basis of the objection. This interpretation is supported by the section of the Magistrates Act which defines the powers and jurisdiction of the magistrate judges. 28 U.S.C.S. § 636(b)(1)(C). *See,* Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991); Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). While this pleading presents a factual or legal basis for each objection, Plaintiff specifically requests a hearing before this Court as part of its "*de novo* determination" process of review.
-

5.  Plaintiff objects to the Magistrate's finding that "claims in Count III which allege constitutional error in Plaintiff's 2005 trial" are dismissible under Heck v. Humphrey, 512 U.S. 477 (1974)( page 6, Report and Recommendation);

6.  Plaintiff objects to the Magistrate's finding that the individual defendants are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982) (page 7, Report and Recommendation);

7.  Plaintiff objects to the Magistrate's finding that only Counts I, II, and III allege causes of action.  (page 2, Footnote 2, Report and Recommendation); and

8.  Plaintiff objects to the Magistrate's failure to hold a hearing or other similar "proceeding" in the Magistrate Judge's preparation and issuance of his Report and Recommendation.


**Factual Summary**

On April 12, 2010, Defendant Jim Hood filed a Motion to Dismiss (hereinafter referred to as the "Hood Motion"). On July 1, 2010, the above-captioned Federal Defendants (hereinafter collectively referred to as the "Federal Defendants") filed a second Motion to Dismiss (hereinafter referred to as the "Federal Motion") as well as a Memorandum of Authorities in Support of the Motion to Dismiss, both in connection with the Complaint filed in the above-captioned matter. The factual predicate for the underlying Complaint has been well-narrated in pleadings by both the Plaintiff and the Defendants. Though the factual allegations in support of this civil suit and in support of its defenses are controverted, the brief summary presented in the Report and Recommendation, on page 1, is generally accurate. The inaccuracies, for which objection is taken, relate to facts collateral to the claims and defenses.

(For technical fidelity to both history and to this case, Plaintiff notes for this Honorable

Court that in 1967 a Federal jury empaneled in this jurisdiction found seven individuals guilty for

violating the Federal civil rights of James Chaney, Andrew Goodman, and Michael Schwerner.

Those three individuals, according to the factual findings of the Federal jury, were killed in 1964

by seven specific individuals and not by "members of the Neshoba County and Lauderdale

County chapters of the Ku Klux Klan."  The defendants were not charged or convicted due to

their association or membership in any group.)

## Points of Authority Related to Specific Objections.

### Count I

Notwithstanding the conclusions of the Magistrate Judge, Count I of the Complaint *does*

state a claim for which relief may be granted.  For the purposes of a motion to dismiss, this Court

must view the allegations of the Complaint in the light most favorable to the Plaintiff, consider

the allegations of the Complaint as true, and accept all inferences therefrom.  Scheuer v. Rhodes,

416 U.S. 232 (1974).  Furthermore, the Court must limit its consideration to the Complaint and

any written instruments attached as exhibits thereto. *See*, GSW, Inc. v. Long County, Ga, 999

F.2d 1508 (11th Cir. 1993); Tucker v. National Linen Service, 200 F.2d 858 (5th Cir. 1953).

Augmenting this perennial standard for motions to dismiss, the U.S. Supreme Court recently

stated that the claim to relief must also be "plausible on its face." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)

Though the Report and Recommendation concurs with this standard, the recognition and

acceptance of factual allegations, which this Court must accept as true (see, page 2, Report and

Recommendation) differ from what the Plaintiff notes in the pleading.  Plaintiff maintains that the Magistrate's recognition and acceptance of factual allegations are overly narrow and incomplete.

Count I alleges a cause of action of conspiracy, conspiracy to violate the Plaintiff's constitutional rights. The cause of action is fashioned in both terms of common law and statutory elements. In his complaint, Plaintiff claims conspiracy under 42 U.S.C. §1983. In relevant part, that section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In any Section 1983 action, two essential elements are required: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527 (1981)), *cert. denied*, 466 U.S. 976 (1984). Not only do the Plaintiff's allegations (if taken as true) describe conduct depriving a person of rights, privileges or immunities secured by the constitution or laws of the United States; this alleged conduct sufficiently describes action under color of state law pursuant to Section 1983. See, Paragraphs 13, 14, 23, and 24

In addition to the required pleading elements of Section 1983, a further element is required to plead a claim for conspiracy. This requirement is also present in the Complaint. In order to survive dismissal of a conspiracy claim under section 1983, the plaintiff must specifically plead facts to show the necessary agreement and concerted action between more than

one individual.  General reliance on conclusory allegations of conspiracy is not considered

sufficient. Notwithstanding this requirement, several circuits have warned that "[d]irect evidence

of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred

from the circumstances." Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980); also see,

Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872  (7th Cir. 1971)

As the Supreme Court noted in American Tobacco Co. V. United States, 328 U.S. 781, 810

(1945):

> Since conspiracies, whether among businessmen or others, are rarely evidenced by
> explicit agreements, the determination of whether a conspiracy existed almost inevitably
> rests on the inferences that may fairly be drawn from the behavior of the alleged
> conspirators. At a minimum, their actions, to support a finding of a conspiracy, must
> suggest a commitment to a common end. 'The circumstances [must be] such as to warrant
> a jury in finding that the conspirators had a unity of purpose or a common design and
> understanding, or a meeting of minds in an unlawful arrangement.

It is because of the need of a factual jury finding in many cases that a claim for conspiracy to

violate a civil rights statute should rarely be decided on summary judgment, because the

existence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should

decide. Adickes v. H. Kress & Co., 398 U.S. 144 (1970).

The Report and Recommendation is erroneous for it minimizes the existence of factual

allegations and dismisses the existence of any damages. The Report questions why there are no

factual allegations "indicating that Killen wanted or attempted to engage in any particular activity

or speech after November of 2007" or "how the Defendants' alleged activities prevented or

discouraged him from doing so."  The Magistrate errs with the obvious.

Mr. Killen has been incarcerated with the Mississippi Department of Corrections, in

segregation and upon a 24/7 lockdown, since his conviction in June of 2005.  The Defendants'

acts directly impacted Mr. Killen's liberty interests. Whether Mr. Killen would attempt to engage
in any particular speech or association since incarceration is a moot query as he is barred from
any associations and is severely hampered in his right to free speech.  No factual allegations as to
post November 2007 activities need be asserted as the damage to Mr.  Killen was fundamentally
his incarceration, an incarceration secured by the Defendants due to a fundamental breakdown in
the adversarial nature of his proceedings.

Mr. Killen was further damaged by the Defendants from 1964 forward. Though he might
not have known who sent a mafia assassin to injure him, he knew that he was targeted.  Though
he might not have known that these Defendants bore responsibility, Mr. Killen knew that he was
threatened, intimidated, and assaulted. These factual matters are outlined in the Complaint.
Unfortunately, the Magistrate Judge may not recognize the difference between a factual
allegation that is possible, probable, or plausible. Under *Twombly,* a factual allegation must be
plausible on its face. "Plausible" is commonly defined by Merriam-Webster as "superficially fair
or reasonable,""superficially pleasing or persuasive," and "appearing worthy of belief."

Magistrate Judge Ball concludes that a claim alleging tortious conducts in the 1960s
damaging a party forty years later is not "plausible on its face."  Given the allegation that the
source of the tortious conduct includes the Federal FBI, a high official in the Department of
Justice, and an organized crime figure with a 35-year history of battery and murder, the factual
allegation is not far from being superficially fair, reasonable, or worthy of belief.

The Magistrate Judge, with all due respect, has perhaps forgotten the events of history
which reflect circumstances when tortious conduct chilled speech, association, and actions for
decades. See, Wheeler, Ed. (1971) Profile of a race riot. O*klahoma Impact Magazine IV* June-

July. (Outlining the Tulsa race riot and murders of 1921) "Avoidance is one of the characteristics of PTSD, and many of the victims certainly were exposed to threats of death and injury. However, it seems more likely that many blacks were afraid that the white men could come again if they talked." Allen, James R., Conspiracies of Silence, *IDEA*, July 25, 2000, Volume 5, No. 1; also see, Bonacci v. King, Case No. 4-cv-91-3037, D.C. Nebraska (16 year hiatuses between Constitutional violations and legal action to recover damages); and DeCamp, John, The Franklin Coverup AWT, Inc.: Lincoln, Nebraska, 1992 (outlining the still silent story of embezzlement and child prostitution where witnesses were kept silent by threats from the FBI)

Plausibility, by its definition and nature, is a fact-determinable concept. *See*, Neitzke v. Williams, 490 U.S.319, 327, 109 S.Ct. 1827, 104 L.ED.2d 338 (1989)("Rule 12(b)(6) does not countenance  . . .  dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.ED.2d 90 (1974)(a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") While both *Neitzke* and *Scheuer* were decided before *Twombly,* they still provide guidance in how a court can determine plausibility even if it appears that recovery might be remote and unlikely.

The Federal Defendants argue that a claim under the First Amendment must reflect a "chilling" effect arising on speech or association due to the actions of the government. The Report and Recommendation suggests that such a chill is not plausible after forty years. Without presently arguing as to the propriety of this position, assuming, for argument's sake, that this position is applicable and appropriate, it fails to recognize the essence of Count I.

Mr. Killen claims in Count I that he has been injured due to a conspiracy to violate his First Amendment rights.  The "chilling effect" described by the Defendants arose in 2007 when

he first started to learn of much of the illegal and overt acts supporting the subject conspiracy.
This recognition and injury is not barred by any statute of limitations, as suggested by the
Defendants in their motions, as the allegation in the Complaint is of an ongoing conspiracy
which, to date, has not ended.  Notwithstanding the public exposure of a particular overt act
supporting the conspiracy, the conspiracy itself concludes only when one of the fundamental
elements disappears. It is then, and only then, that the applicable statute of limitations begins to
run. Poster Exchange v. National Screen Service Corp., 517 F.2d 117 (5th Cir 1975)(Continuing
illegal conduct resulting in a continued invasion of a plaintiff's rights give rise to continually
accruing rights of action.)

        The Complaint specifically and directly cites factual allegations that support the
conclusions of the Count. These allegations are primarily, but not entirely, found in Paragraph 24
of the Complaint. These three examples of overt factual acts include (a) contracting with
organized crime to assault, threaten, coerce, and terrorize individuals who might be members of
the Ku Klux Klan, (b) violating the statutory prohibition of posse comitatus (18 U.S.C. 1385),
and (c) operating an extralegal domestic counterintelligence program to disrupt and neutralize the
Klan[2].

        Paragraph 26 of Count I  further describes factual support for the allegation of a
conspiracy. The Paragraph quotes recently obtained internal memoranda of the FBI which

_____

        [2]The factual circumstances regarding the secret and unconstitutional program known as
COINTELPRO are well documented now to both the federal judiciary and to America. See,
Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984)(FBI agents were found liable for conspiracy to
violate plaintiffs' First Amendment rights through the development and implementation of an
illegal domestic program of counterintelligence); Also, note Footnote 3, page 12, *Memorandum*
regarding the acknowledgment of this illegal program.

explicitly state that certain improper acts surrounding the investigation of the subject murders should be kept secret. This cover-up included a memorandum consensus between Former Attorney General Nicholas Katzenbach and others that "under no circumstances should we disclose information" to Attorney General Robert Kennedy. With all due respect to this Court, this factual allegation requires repeating.  In a nation where "transparency promotes accountability,"[3] a severely redacted and secreted memorandum demanding nondisclosure to a superior, specifically the Attorney General of the United States, must serve as at least a plausible piece of evidence supporting the factual allegations.

Under Section IV (Statement of Facts) of the Complaint, additional factual allegations are made to augment and supplement the allegations of Count I.  When these paragraphs are read together, and in support of each other, sufficient allegations of fact are presented to meet the long-standing procedural rule that a complaint simply contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. Rule 8(a)(2)

**Counts II and III**

The Report and Recommendation from the Magistrate Judge addresses Counts II and III by concluding that there is "an absence of any allegation of a specific wrongful act committed by Defendants agasint Plaintiff. " (Page 5, Report and Recommendation) This conclusion is erroneous.

The conclusion regarding the ability of the two counts to withstand a motion to dismiss includes the statement that "the only factual allegations of any wrongdoing at all by anyone are

---

[3]*Memorandum on Transparency and Open Government,* President Barack Obama,  74 FR 4685 (2009-01-21)

those concerning intimidation of witnesses and the use of a defense attorney as an informant." *Id.* This statement is incorrect for the Complaint presents more than just this one limiting factual allegation.  Further, the underlying legal conclusion is likewise erroneous for it minimizes the destructive actions of these uncontroverted factual allegations and questions  "how he was injured by such actions." *Id.*

It would have been sufficient, for purposes of these pending motions, for Mr. Killen to only present the primary factual allegations recognized by the Magistrate Judge, wrongdoings by others in intimidating witnesses and the use of his defense attorney as a contemporaneous government informant. These are specific, and uncontroverted. However, the Report and Recommendation dismisses these allegations because Killen allegedly fails to present damages for these actions. The Magistrate is in error in failing to note the allegations of damages. Paragraphs 5, 18, 32, and 33 outlined allegations of damages. Primarily, damages go to the intentional interference with Mr. Killen's constitutional rights. specifically including the right to counsel, the right to confront his accusers, and the right to a balanced adversarial system of justice. The paragraphs of Count III further detail that the Defendants' actions took from Mr. Killen his Sixth Amendment rights. He was forced to endure a trial in the 1960s which was antithetical to our adversarial criminal justice system. And in the state's trial in 2005, the prosecution almost entirely relied on the tainted evidence and testimony from 1967.  All of this information is contained in the Complaint. Yet all were ignored by the Magistrate Judge.

To further the errors in the Report and Recommendation, the Magistrate Judge reports on page 5:

He does not claim that any of these witnesses testified at his state trial - the only one at which he was convicted - or that they falsely implicated him in the murders. He does not claim that his own attorney was a paid informant or, if so, how he was injured . . .

This finding is incorrect.

Paragraph 38 of the Complaint alleges that Defendant Hood utilized the files and the transcripts from the 1967 trial to prosecute the Plaintiff in 2005.  In fact, most of the testimony was the reading into the record of witness statements from the earlier trial.  Mr. Killen specifically alleges in Paragraph 38 that the Defendants "continued the conspiracy of abusing judicial process and interfering with the adversarial system by recognizing the taint of the 1960s proceedings, failing to report the abuse and unconstitutional activities,  and continuing those acts which fundamentally broke down the adversarial process into the new proceedings by maintaining the coverup of its existence."

And regarding the conclusion that Mr. Killen "does not claim that his own attorney was a paid informant," one only needs to view Paragraph 37 of the Complaint that reads, in part:

> *And finally, Defendant FBI, with the knowledge and assent of Defendant Doar, engaged the services of Clayton Lewis, one of the lead defense attorneys, to be an on-going paid informant for the FBI.*

The Report and Recommendation is in error. The allegations are fact-based and allege more than "the mere possibility of misconduct." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009) The allegations of conspiracy based upon constitutional violations (Count I), intentional torts (Count II) , and interference with the adversarial process (Count III) remain an outline of a circumstance, more than plausible, that injured the Plaintiff. That outline is firmly supported by Paragraphs 8, 15, 23, 24, 26, and 37, as well as by  Paragraphs 1 through 18 are incorporated by reference into each Count.

The Report and Recommendation further suggests that the statements in Count II and III are primarily conclusory and thus should be given no value. The Federal Defendants argue that in addition to being conclusory (if you ignore four or five counts in the Complaint), Count I should fail because "the claim of unlawful action is implausible."   The argument presented is both incomplete and a mis-read of the prior caselaw.

The argument presented is incomplete for it suggests that any unlawful action, if committed by the Government, is by definition implausible, and cannot be sustained.  Such a bright-line standard fails at the stage of a motion to dismiss and fails in any test of sincere and alleged claims of government misconduct . Implicit in this allegation is the full spectrum of professional responsibilities and obligations cited earlier from the *Mendoza, Duckworth, Perdomo*, and *Auten* cases. Specifically, Defendant Doar maintains the front-line duty to be aware of investigative matters, not only for *Brady* purposes but also to recognize, as an officer of the court, if any interference with the adversarial process had occurred or is occurring.  *See,* ABA Model Rule 3.8(d), Model Rules of Professional Conduct; *also see*, United States v. Williams, 504 U.S. 36 (1992)(Prosecutors have an obligation to protect the fundamental fairness of proceedings.)[4]

Though it is a *factual* matter awaiting a jury determination as to whether Defendant Doar affirmatively entered into a conspiracy to deprive Mr Killen of his rights, or whether Defendant Doar knew or should have known about the unconstitutional acts of the other defendants, the

---

[4]For example, a strong argument can and is made that Defendant Doar was aware of the coverup conspiracy addressed in FBI memoranda, memoranda that were part of the investigative file.  See, Complaint, Paragraph 26, footnote 5.   As "one of the most respected and courageous civil rights lawyers in our history," Mr. Doar would have dutifully and meticulously reviewed every page of the unredacted FBI investigative file prior to trial.

factual allegations of the complaint relating to the conspiracy to commit intentional torts (i.e. pistol whipping potential witnesses) and the factual allegations of the intentional interference with the adversarial process accomplished by using Mr. Killen's counsel as an FBI "snitch", are specifically outlined in the Complaint.

Though the Federal Defendants claim that only "conclusory allegations" are presented, the actual Complaint reflects operative facts that support each count. See, Paragraphs 29, 30, 37, and 38. It is quite easy to argue a motion to dismiss when allegedly conclusory allegations are "cherry-picked" from a comprehensive Complaint.  It is more challenging, and rarely successful, when an advocate attempts to judge factual allegations against the well-established standard of review.  These paragraphs above-cited provide the factual support to survive the subject motion to dismiss. It was error for the Magistrate Judge to find to the contrary.


***Prosecutorial Immunity and Qualified Immunity***

The Federal Defendants argue, and the Magistrate Judge has accepted, that the actions of which Mr. Killen complains are all firmly within the limits of the prosecutorial function protected by absolute immunity. (Page 6, Report and Recommendation) Additionally, it is argued that a level of qualified immunity should apply for executive branch officials, citing Harlow v. Fitzgerald, 457 U.S. 800 (1982) Both immunity defenses should not apply in this case.

The Report and Recommendation suggests a complete blanket of prosecutorial immunity for any claims related to the prosecution of Mr. Killen, citing Imbler v. Pachtmann,424 US 409 (1976.) Such a conclusion and finding is an over-generalization and as such unsupported by the prior case law.

Several concepts are implicated by the issue of immunity in this case. These concepts are:

1.   "The office of the public prosecutor is one which must be administered with courage and independence."  Imbler v. Pachtman, 424 U.S. 409, 423 (1976)(emphasis added).

2.   "Prosecutors have an obligation to protect the fundamental fairness of proceedings." United States v. Williams, 504 U.S. 36 (1992)

3.   A prosecutor is liable for conspiracy injuries "if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred when he was not in his prosecutorial role.  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1282 (11th Cir. 2002)(A prosecutor is liable for conspiracy injuries "if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred when he was not in his prosecutorial role.")

While Imbler presents a shield of immunity, the Court discusses the importance of prosecutors recognizing that they are not above the law and that they can and will be punished to deter misconduct.

Defendants Doar and Hood, despite the conclusion of the Report and Recommendation, are not "entitled to absolute prosecutorial immunity." (Page 6) As alleged in the Complaint, Defendant Doar, as lead prosecutor, was obligated to perform his role as both advocate and primary investigator. And while his job as advocate may be protected by some level of immunity in a civil rights damages action, his defense shield from illegal, unconstitutional, and improper acts as investigator-in-chief is one of only qualified immunity. *See,* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1282 (11th Cir. 2002)(A prosecutor is liable for conspiracy injuries

"if his agreement to join the conspiracy or conduct knowingly done in furtherance of it occurred when he was not in his prosecutorial role."); <u>Mullinax v. McElhenney</u>, 817 F.2d 711, 715 (11th Cir. 1987)( When a prosecutor steps out of the role of advocate and into the role of investigator or by performing a discretionary governmental function, he may only be entitled to qualified immunity.)

The determination of the level of immunity, then, is a factual one that must only be accomplished through discovery. However, the Magistrate Judge made an inherent factual finding regarding the Defendants' roles and level of potential immunity without taking evidence, or even holding a hearing.  The conclusions of the Report and Recommendation were made solely on the pleadings.  Such a determination, at this stage in the proceedings, should have assumed all facts, then, in favor of the Plaintiff. *See,* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) (All legitimate factual inferences must be made in favor of the nonmovant).

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The qualified immunity defense does not apply if the defendant violates the plaintiff's constitutional right, and the plaintiff's constitutional right clearly was established at the time of the violation. <u>Manis v. Lawson</u>, 585 F.3d 839 (5th Cir. 2009). Consequently, both levels and principles of immunity for Defendants Hood and Doar require factual findings to support. No such facts were placed into evidence other than the allegations of the pleadings, and the inferences therefrom should have supported the Plaintiff's burden. It was error of the Magistrate Judge to find otherwise.

With regard to both the prosecutorial defense, which dissipates if the prosecutor oversteps his traditional advocate role, and the *Harlow* shield of qualified immunity, both are conditional on the government official not violating " clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, at 818

Federal courts use a two-part test when evaluating a defense of qualified immunity, a test apparently not applied by the Magistrate Judge. First, the court must determine "whether the plaintiff alleged a violation of a clearly established constitutional right." Cozzo v. Tangipahoa Parish Council - President Gov't, 279 F.3d 273, 284 (5th Cir. 2002). Second, the court must decide whether the defendant's conduct was "objectively reasonable in light of clearly established law at the time that the challenged conduct occurred." Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).

If the Magistrate Judge had applied this test based on the allegations of the pleadings the result would have been different than the unsupported conclusory finding currently presented in the Report and Recommendation regarding immunity. If the Magistrate Judge had not erred, he would have recognized (a) that immunity is not intended to protect those who knowingly violate the law (Malley v. Briggs, 475 U.S. 335(1986)), and  (b) the Defendants' acts were contrary to the law (.Ex Parte Young, 209 U.S. 123(1908)(A federal employee who uses his office to commit a federal constitutional violation should not be allowed to claim that office as grounds for an absolute immunity defense.)

Defendant Doar was the lead prosecutor in the Federal case against Mr. Killen. A prosecutor has certain professional obligations during the course of a criminal trial. *See*, Mendoza v. Miller, 779 F.2d. 1287 (7th Cir. 1985), *cert denied*, 476 U.S. 1142 (1986) Included in

those obligations are those professional responsibilities that allow for a balanced, sustainable adversarial system, including the general obligation not to be kept in ignorance of the different aspects of the case. Carey v. Duckworth 738 F.2d 875 (7th Cir. 1984); *and see,* United States v. Perdomo, 929 F.2d 967 (3rd Cir. 1991); United States v. Auten, 632 F.2d 478 (5th Cir. 1980)

Defendant Doar knew or should have known about the improper acts permeating the criminal investigation of those killings. Whether he did, when he did, or why he did not are all factual questions that cannot be ignored by sustaining a motion to dismiss. In sum, it was error for the Magistrate Judge to summarily conclude the defense of prosecutorial immunity without specific factual findings.

### *Eleventh Amendment*

In an unsupported conclusory statement, the Magistrate Judge states that "no claim against the FBI can stand, as the Eleventh Amendment prohibits any monetary judgment against this entity." (Page 6, Report and Recommendation). This conclusion is in error and lacks any foundation.

The Federal Defendants had argued to the Magistrate in their motions to dismiss that the claims against the FBI should be dismissed as the agency is protected by sovereign immunity. In a brief generalized statement, the defendants argue that Congress had not consented to damage suits against the FBI. Plaintiff, as a matter of law, disagrees and notes 28 U.S.C. 1346 and the express waiver adopted by Congress for lawsuits arising out of tortious conduct.[5]

---

[5]28 U.S.C.§1346 provides, *inter alia,* that:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of

The Eleventh Amendment to the United States Constitution "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. CONST. amend. XI; College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)). The scope of the immunity provided by the Eleventh Amendment "extends to any state agency or entity deemed an "alter ego" or "arm" of the state." Id. at 326 (citing Vogt v. Board of Comm'rs, 294 F.3d 684, 688-89 (5th Cir. 2002))

The primary purpose of this amendment is to protect the treasuries of the respective states. Consequently, Section 1983 actions are barred against states unless specifically permitted by Congress. See Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000) Two factual issues dictate a different conclusion than the one reached by the Magistrate Judge. First, the FBI, the defendant noted as the protected defendant under the Eleventh Amendment by the Magistrate Judge, is not a state actor. It is a Federal agency, and as such is not covered by this Constitutional provision. Secondly, the Plaintiff is seeking both a monetary award and non-monetary relief.  In these cases, the Eleventh Amendment does not protect the federal agency of the FBI from suit.

---

Federal Claims, of:
. . .
       (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, . . .

*Heck v. Humphrey*

The Report and Recommendation summarily states that "those claims in Count III which allege constitutional error . . would be dismissible under *Heck v. Humphrey*." This application of the principle outlined in Heck is erroneous and should not be sustained.

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1974), the Supreme Court stated that  when allowing recovery of damages would necessarily cause the invalidity of a conviction or sentence, a §1983 plaintiff must demonstrate that his  conviction or sentence has been reversed, vacated, or otherwise called into doubt before that plaintiff can proceed under §1983. In short, the High Court held that a defendant may not maintain an action under 42 U.S.C. § 1983 if the effect of granting relief would be to invalidate the sentence he is serving.  <u>Spencer v. Kemna,</u> 523 U.S. 1, 21, 118 S. Ct. 978, 990, 140 L. Ed. 2d 43 (1998) (Ginsburg, J., concurring). By contrast, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  <u>Heck,</u> 512 U.S. at 487, 114 S. Ct. at 2372-73 (footnote omitted).

Erroneously, the Magistrate Judge has simply accepted the Defendant's Motion argument regarding <u>Heck v. Humphrey</u> and its application to this case. This opinion and recommendation should not be sustained.

The examples in the Supreme Court case law are important.  "If, for example, [a plaintiff] were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the [conviction or sentence], then *Heck* would have no application at all." <u>Spencer,</u> 523 U.S. at 17, 118 S. Ct. at 988 (citations

omitted). Thus, <u>Heck</u> does not bar purely procedural claims brought under §1983, even when those procedural claims are serious, constitutional matters that shock the conscience, as the claims hereunder do.

A second example directly similar to the case at hand is further provided in caselaw. A civil suit for damages attributable to an allegedly unconstitutional unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the §1983 plaintiff's still-outstanding conviction. See, <u>Heck,</u> 512 U.S. at 487 n.7, 114 S. Ct. at 2372 n.7 (citations omitted); see also <u>Datz v. Kilgore</u>, 51 F.3d 252, 253 n.1 (11th Cir. 1995) (per curiam).

In the instant case, Mr. Killen suffers from no judgment or conviction from the 1960s. He brings this action for remedies attributable to unconstitutional acts. The fact that the evidence obtained from those illegal acts was introduced in a state criminal trial resulting in his current conviction does not introduce the *Heck* restriction.

The civil rights outlined in the Complaint address abridgments that were intentionally made against the Plaintiff prior to any conviction, judgment, or other disability by state court. The Plaintiff is not barred by *Heck* in seeking remedy for these actions.

The Motion to Dismiss, in a brief footnote 4, seeks to minimize the factual allegation of wrongdoing associated with the Federal Defendants' violation of 18 U.S.C. 1385, the Posse Comitatus Act.  Whether a violation of this statute occurred or not is a factual matter that, for the purposes of this Motion, must be viewed as true. In response, though, Plaintiff notes that the restrictions first noted in <u>Bissonette v. Haig</u>, 776 F.2d 1384 (8th Cir. 1985) and in 10 U.S.C. 371,

et seq, arose almost two decades after the specific violation by the Federal Defendants of Section 1385 in the State of Mississippi.

### *Other Causes of Action IV, V, and VI*

The Report and Recommendation suggests that nothing substnative is requested in Counts IV, V, and VI and therefore it should not even be reviewed for a determination as requested by the Court. Such a determination is incorrect.

Count IV seeks non-monetary relief by way of a declaratory judgment. It is a substantive count of the complaint requesting an acceptance of jurisdiction and a determination or the rights of the parties. The Declaratory Judgment Act is an enabling Act which confers a discretion on the courts to take jurisdiction and resolve the issues raised in the non-monetary count. See, Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237 (1952).

To accept jurisdiction, courts typically review a certain factual criteria, an evaluation omitted by the Magistrate Judge. Those factors include a determination as to: 1) the existence of a state court proceeding involving the same issues and parties; 2) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; 3) the convenience of the parties; 4) the public interest in a settlement of the uncertainty of obligation; and 5) the availability and relative convenience of other remedies.  If a hearing had been held, the Magistrate Judge would have found that all of these factors support accepting jurisdiction and in considering this count as a substnative allegation.

Count V is a *Bivens* action.  It seeks monetary relief for substantive, material, and factually alleged wrongdoing by the Defendants. Bivens v. Six Unknown Named Agents of

<u>Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)(plaintiff could recover money damages for constitutional violations committed by federal agents); <u>Rutherford v. United States</u>, 702 F.2d 580 (5th Cir. 1983)(Fifth Circuit support of *Bivens* as a substantive claim.)  It was error of the Report and Recommendation to ignore this Count of the Complaint.

Count VI is a punitive damage claim. To the extent that it alleges a pattern of practice, representing a practice of intentional wrongful conduct and/or malice causing harm and resulting in damages to Plaintiff, it is a substantive count of the complaint to be adjudged as part of any motion to dismiss. It was error of the magistrate to summarily ignore this count.

### *Rule 72(b)  violation*

The final objection raised is the Magistrate Judge's failure to hold a hearing or other similar "proceeding" in preparation and issuance of the Report and Recommendation. Rule 72(b) of the Federal Rules of Civil Procedure provides, in part, that a magistrate judge may hear a pretrial matter dispositive of a claim. He must promptly conduct "the required proceedings" when so assigned.

In this case, the Magistrate Judge was assigned the pending motions to dismiss for "a determination."  The Magistrate Judge apparently reviewed the motions and the responsive pleadings and from those documents entered a Report and Recommendation. He did not hold any hearings or provide any opportunity to present evidence or address procedural burdens associated with the claims made and the motions to dismiss.

The Federal Magistrates Act, 28 U. S. C. § 636 (b)(1)(B),  permits a district court to refer to a magistrate a motion to suppress evidence and authorizes the district court to determine and

decide such motion based on the record developed before a magistrate, including the magistrate's proposed findings of fact and recommendations. Congress provided that a district court judge could designate a magistrate to "hear and determine" any dispositive pretrial matter pending before the court. See, Section  636 (b)(1)(B). As part of the delegation associated with dispositive matters, Congress authorized that the district judge may "designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court of [the] motion." Id. While a judge of the court is to make a de novo determination of the magistrate judge's report and recommendation if any party files an objection, he does not have to hold a new hearing as it is anticipated that a prior hearing was held by the magistrate judge. See, United States v. Raddatz, 447 U.S. 667 (1980)(Discussing the due process requirements of the process.) "Congressional intent, therefore, is unmistakable. Congress focused on the potential for Art. III constraints in permitting a magistrate to make decisions on dispositive motions. . .The guarantees of due process call for a 'hearing appropriate to the nature of the case.'Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). The issue before us, therefore, is whether the nature of the issues presented and the interests implicated in a motion to suppress evidence require that the district court judge must actually hear the challenged testimony. The core of respondent's challenge to the statute is that "[the] one who decides must hear." Morgan v. United States, 298 U.S. 468, 481 (1936). Id. at page 677

It was error for the Magistrate Judge not to hold a hearing on the complex pending motions.

*Conclusion*

Conspiring to violate another person's constitutional rights violates Federal law. *See,* Dennis v. Sparks,  449 U.S. 24, 27 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980) To establish a case of such civil rights violations, a plaintiff must show, among other things that the defendants reached an agreement, by commission or omission, to violate those rights. See,  Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), *overruled in part on other grounds by* Whiting v. Traylor, 85 F.3d 581, 584 n. 4 (11th Cir. 1996).

The plaintiff does not have to produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990), but must show some evidence of agreement between the defendants. Bailey v. Bd. of County Comm'rs of Alachua County, 956 F.2d 1112, 1122 (11th Cir. 1992)

Plaintiff has pled the necessary elements of the causes of action presented in the Complaint. Further, Plaintiff requests that this Court take judicial notice of the evidence, verified pleadings, and affidavits filed in the Plaintiff's habeas proceedings found at Killen v. Epps, Case No. 4:08CV0077-HTW-LRA, (S.D. Miss) (A copy of the docket for said proceedings was previously submitted to this Court.)

This case is not a call to arms for those who support hatred. To suggest so, as the Federal Defendants do, is an implicit statement by those who are sworn to uphold our Constitution that the rights, privileges, and immunities of our democracy are only for some, are only for those whom the Government sees as worthy of such rights. It is quite easy in the context of our history to pass off as "fantasy" claims of constitutional violations when the victim is an unpopular individual.  It is more challenging, more courageous, and more upright to recognize

constitutional abridgments when the victims are the least empathetic of our nation. See, <u>Kime v.</u> <u>United States</u>, 459 U.S. 949 (1982)(denying certiorari on flag burning case); <u>Ovadal v. City of</u> <u>Madison,</u> 416 F.3d 531 (7th Cir. 2005) (Protest against homosexuality is protected speech.);<u>Hirabayashi v. United States</u>, 828 F. 2d 591 (9th Cir. 1987)(and compare with the original *Hirabayashi* and *Korematsu* decisions of WWII era regarding Japanese internment and restrictions)

For the reasons cited above and supported by the law of this Circuit, the Plaintiff requests that his objections be sustained.

Respectfully Submitted,

February 17, 2011                          <u>/s/Robert A. Ratliff</u>
                                           Robert A. Ratliff, Esq.
                                           Attorney for Petitioner
                                           713 Dauphin Street
                                           Mobile, AL 36602
                                           (251) 438-2250 voice
                                           (251) 438-6180 telecopy


                                           <u>/s/ Jon A Green</u>
                                           Jon A. Green, Esq.
                                           MS # 8363
                                           713 Dauphin Street
                                           Mobile, AL 36602
                                           (251) 438-2250 voice
                                           (251) 438-6180 telecopy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Objections to the Magistrate's Report

and Recommendations has been sent this 17 day of February 2011, by the courts' ECF/CM

noticing System to:

Mary Jo Woods, Esq.
Special Assistant Attorney General
P.O. Box 220
Jackson, Mississippi 39205
E-Mail: mwood@ago.state.ms.us

Kelly Heidrich, Esq.
United States Department of Justice
Box 7146
Washington, D.C. 20044-7146
Email: kelly.heitrich@usdoj.gov

Mitzi Dease Paige, Esq.
Assistant United States Attorney
188 East Capitol Street - Suite 500
Jackson, Mississippi 39201-0101
E-Mail: Mitzi.Paige@usdoj.gov
Phone Number: 601-973-2840
Facsimile Number: 601-965-4409

/s/Robert A. Ratliff
Robert A. Ratliff, Esq.

/s/ Jon A Green
Jon A. Green, Esq.